IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Sonya Rice, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:15-2492-HMH-JDA |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Charter Communications, Inc.[1], | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for the Report and Recommendation of the United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[2]  Sonya Rice ("Rice") alleges violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*.  Defendant Charter Communications, LLC ("Charter") moved for summary judgment.  In her Report and Recommendation, Magistrate Judge Austin recommends granting Charter's motion for summary judgment.

---

[1] Charter states that it is incorrectly identified in the caption as Charter Communications, Inc., and is properly identified as Charter Communications, LLC.  (Mot. Summ. J. Ex. 1 (Mem. Supp. Mot. Summ. J. 1), ECF No 25-1.)

[2] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

1

## I. FACTUAL AND PROCEDURAL HISTORY

Rice was employed as a broadband sales advisor and a sales representative for Charter from around April 30, 2012 until April 1, 2014. (Compl. ¶ 8, ECF No. 1; Answer ¶ 8, ECF No. 6.) At the time of her termination, Rice's work schedule was 9:00 a.m. to 8:00 p.m. on Mondays, Tuesdays, Wednesdays, and Saturdays. (Mot. Summ. J. Ex. 4 (Rice Dep. 15-16), ECF No. 25-4.) On February 22, 2014, Rice submitted a leave request for 1:00 p.m. to 8:00 p.m. on Saturday, March 22, 2014, through Charter's electronic scheduling system, Empower. (Id. Ex. 4 (Rice Dep. 24-25), ECF No. 25-4; Reply Ex. 1, generally, ECF No. 36-1.) Rice had planned a sixteenth birthday party for her daughter that day. (Mot. Summ. J. Ex. 4 (Rice Dep. 8-9), ECF No. 25-4.) One to two weeks before March 22, 2014, Rice scheduled an appointment with her daughter's medical provider so that the medical provider could observe her daughter during the birthday party. (Id. Ex. 6 (White Dep. 26.).)

Rice's February 22, 2014, leave request was initially marked as pending, but was subsequently denied due to insufficient staffing. (Id. Ex. 4 (Rice Dep. 8), ECF No. 25-4; Resp. Opp'n Summ. J. Ex. 2 (Empower Entry), ECF No. 34-4.) Rice submitted a second request through Empower on March 21, 2014, which was also denied for insufficient staffing. (Resp. Opp'n Summ. J. Ex. 2 (Empower Entry), ECF No. 34-2.)

Charter has an attendance policy that uses a system of "occurrences" to track employee attendance issues. (Id. Ex. 5 (Barker Dep. Ex. 8 (Customer Care Attendance and Punctuality Policy ("Attendance Policy") ¶ 1.2)), ECF No. 25-5.) Attendance occurrences are considered with all other performance issues to determine any disciplinary action. (Id. Ex. 5 (Barker Dep. 56), ECF No. 25-5.) The Attendance Policy states that scheduled absences will not incur

an occurrence, but "[a]bsences that have not been officially approved are <u>never</u> considered to have been scheduled, regardless of advance notice." (Id. Ex. 5 (Barker Dep. Ex. 8 (Attendance Policy, ¶ 1.3)), ECF No. 25-5 (emphasis in original).) The Attendance Policy states that an unscheduled absence is "[a]n absence from work of more than one (1) hour that has not been approved and scheduled in advance using locally established time-off request procedures." (Id. Ex. 5 (Barker Dep. Ex. 8 (Attendance Policy, ¶ 1.4)), ECF No. 25-5.) The Attendance Policy states that an absence from work for more than four hours will incur one occurrence and an absence of between one and four hours will incur one-half occurrence. (Mot. Summ. J. Ex. 5 (Barker Dep. Ex. 8 (Attendance Policy, ¶ 1.4)), ECF No. 25-5.)

Pursuant to its attendance and discipline policies, Charter addresses disciplinary issues with a set of progressive corrective actions, beginning with a verbal warning, then a written warning, then a final written warning, and ending with termination. (Id. Ex. 5 (Barker Dep. 57-58, Ex. 8 (Attendance Policy, ¶ 5)), ECF No. 25-5.) It is undisputed that prior to March 22, 2014, Rice had received a final warning due to past performance related issues and occurrences. (Id. Ex. 4 (Rice Dep. 104), ECF No. 25-4.)

Although her leave request for March 22, 2014, was never approved, Rice avers that Betty Dillard ("Dillard"), her direct supervisor, informed her that if she worked for at least one to two hours on March 22, 2014, she would receive only a one-half occurrence. (Mot. Summ. J. Ex. 4 (Rice Dep. 5), ECF No. 25-4.) Rice reported to work at 10:00 a.m. on March 22, 2014, one hour after she was scheduled to begin work. (Id. Ex. 4 (Rice Dep. 51), ECF No. 25-4.) Rice alleges that when she reported to work her feet were hurting badly and that she only came in to avoid receiving a full occurrence. (Id. Ex. 4 (Rice Dep. 28), ECF No. 25-4.) Rice states

3

that she spoke with Dillard who informed her that she could leave and requested that Rice email her prior to leaving. (Mot. Summ. J. Ex. 4 (Rice Dep. 10), ECF No. 25-4.) Rice avers that she emailed Dillard prior to her departure. (Id. Ex. 4 (Rice Dep. 11), ECF No. 25-4.) Rice departed work at 11:55 a.m., eight hours before her scheduled shift ended and did not return the remainder of the day. (Id. Ex. 4 (Rice Dep. 51), ECF No. 25-4.)

When Rice reported to work on March 24, 2014, she learned that she had received a whole occurrence for her absence on March 22, 2014. (Id. Ex. 4 (Rice Dep. 22), ECF No. 25-4.) On March 25, 2014, Dillard sent an email titled "Sonya Rice Attendance Final" to Human Resources Officer Michael Barker ("Barker"), which included a corrective action report requesting Rice's termination. (Id. Ex. 5 (Barker Dep. Ex. 10), ECF No. 25-5). The same day, Barker scheduled a meeting with Rice for March 31, 2014. (Mot. Summ. J. Ex. 5 (Barker Dep. 75), ECF No. 25-5). However, prior to the March 31 meeting, but after March 24, 2014, Rice avers that she emailed Barker about her need for FMLA leave due to her medical condition. (Id. Ex. 4 (Rice Dep. 22), ECF No. 25-4.) During the March 31 meeting, Rice requested intermittent FMLA leave in the future due to her medical condition. (Id. Ex. 4 (Rice Dep. 50, 98-103), ECF No. 25-4.) Rice alleges that she also informed Barker about her daughter's medical condition. (Id. Ex. 4 (Rice Dep. 22), ECF No. 25-4.) During the meeting, Barker asked Rice whether she was seeking FMLA coverage for any past absences and Rice responded that she was not. (Id. Ex. 5 (Barker Dep. 30-31), ECF No. 25-5.) On April 1, 2014, Rice was terminated for the March 22, 2014 occurrence she received for leaving early during her shift. (Compl. ¶ 29, ECF No. 1; Mot. Summ. J. Ex. 4 (Rice Dep. 96-97), ECF No. 25-4.)

Rice filed the instant suit alleging an interference claim and a retaliation claim under the FMLA on June 22, 2015. (Compl., ECF No. 1.) Charter moved for summary judgment on March 28, 2016. (Mot. Summ. J., ECF No. 25.) Rice filed a response in opposition on April 25, 2016. (Resp. Opp'n Summ. J., ECF No. 34.) On May 5, 2016, Charter filed a reply. (Reply, ECF No. 36.) Magistrate Judge Austin issued her Report and Recommendation on September 2, 2016, recommending granting the motion for summary judgment because Rice failed to adequately plead a claim for FMLA interference for her medical condition, give adequate notice to Charter of her daughter's medical condition as required for a FMLA interference claim, and demonstrate that a reasonable jury could find Charter's legitimate, nondiscriminatory reason for terminating her was a pretext for retaliation. (R&R, generally, ECF No. 45.) Rice filed objections on September 29, 2016. Charter replied on October 17, 2016. (Reply, ECF No. 49). This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. FMLA Interference Claims

The FMLA entitles eligible employees to twelve (12) weeks of leave during a twelve (12) month period for, among other reasons, a serious health condition which prevents an employee from performing employment functions. See 29 U.S.C. § 2612(a)(1)(D).

> The FMLA requires that an employee
> 
> provide notice to her employer when she requires FMLA leave. Where the need for leave is unforeseeable, an employee should give notice to the employer . . . as soon as practicable under the facts and circumstances of the particular case. At bottom, an employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee, however, need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.

Rhoads v. F.D.I.C., 257 F.3d 373, 382-83 (4th Cir. 2001) (internal quotation marks, citations and alterations omitted). When timely and adequate communication is not provided, the FMLA protections do not apply, even if the employee has a serious health condition. See, e.g., Collins

v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001) (noting that "notice is essential" even assuming that the employee was suffering from a serious health condition). To establish a claim for unlawful interference with an entitlement to FMLA benefits, an employee must prove that: "(1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." Rodriguez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006)).

### 1. Interference Claim in Relation to Daughter's Medical Condition

Rice objects to the magistrate judge's recommendation to grant summary judgment on her interference claim in relation to her daughter's medical condition because she submits that viewing the evidence in the light most favorable to her, she adequately notified Charter of her entitlement to FMLA leave for her daughter's medical condition. (Objs. 11-12, ECF No. 48.) However, Rice's objection is without merit because Rice declined to seek FMLA leave for past absences. During Rice's meeting with Barker on March 31, 2014, Rice stated that she was concerned about missing March 22, 2014, for her daughter's appointment and Barker "explained that [Rice] could also apply for [that day], too." (Mot. Summ. J. Ex. 4 (Rice Dep. 68), ECF No. 25-5.) However, when Barker asked Rice whether she was seeking FMLA for past dates, Rice said no. (Id. Ex. 5 (Barker Dep. 30-31), ECF No. 25-5.) While Rice argues that the meeting was "exclusively to discuss FMLA leave for [Rice's] own medical condition," (Objs. 16 n.7, ECF No. 48), it is clear from Rice's own testimony that her daughter's medical condition was discussed. Therefore, even if Rice's absence on March 22, 2014, could have qualified for

FMLA leave, she affirmatively declined to seek it. See Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1244 (9th Cir. 2014) (holding an employee may affirmatively decline to use FMLA leave, even if the employee's reason for seeking leave would invoke FMLA protection); Righi v. SMC Corp., 632 F.3d 404, 409 (7th Cir. 2011), superseded on other grounds by regulation as stated in, Gienapp v. Harbor Crest, 756 F.3d 527 (7th Cir. 2014). Based on the foregoing, this claim fails because Rice affirmatively declined FMLA leave.

However, even if Rice had adequately requested FMLA leave for her daughter's medical condition, the only evidence in the record indicates that, at the time Rice requested leave for March 22, 2014, the sole reason for requesting leave was for her daughter's birthday party. The daughter's medical provider stated that she would not have made an appointment more than one or two weeks in advance and it is undisputed that Rice requested leave on February 22, 2013, a month in advance. (Mot. Summ. J. Ex. 6 (White Dep. 26); Id. Ex. 4 (Rice Dep. 8), ECF No. 25-4.) Further, when Rice scheduled her daughter's medical appointment for March 22, 2014, she was on notice that her leave request may not be approved by Charter. The leave request was marked as pending for at least two weeks. Further, Rice alleges that she spoke to her supervisor and other Charter personnel about how to request an override of the electronic scheduling system because the absence had not been approved. (Id. Ex. 5 (Rice Dep. 9-10), ECF No. 25-5.) Therefore, Rice was not entitled to FMLA leave on March 22, 2014, because she failed to "make a reasonable effort to schedule the treatment so as not to disrupt unduly the

operations of the employer." 29 U.S.C. § 2612(e)(2)(A); see also 29 C.F.R. § 825.203. Therefore, Charter is entitled to summary judgment on Rice's interference claim.[3]

**2. Interference Claim in Relation to Rice's Medical Condition**

Rice next objects to the magistrate judge's recommendation to grant summary judgment on her interference claims under the FMLA relating to her medical condition. Rice argues that the magistrate judge improperly refused to consider this claim. (Objs. 7, ECF No. 48). Rice first argues that the magistrate judge erred in concluding that she did not sufficiently plead a claim of interference relating to her medical condition in the complaint. (Id., ECF No. 48.) Second, Rice argues that the magistrate judge erred by refusing to consider new factual grounds to an existing cause of action. (Id., ECF No. 48.) Rice argues that, while she is barred from arguing a separate legal theory, she is not barred from asserting a new factual basis for an existing legal theory. (Id. at 7-8, ECF No. 48 (citing White v, Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992), aff'd, 998 F.2d 1011 (4th Cir. 1993).) Further, Rice argues that the complaint should be liberally construed to allow for a new factual basis, citing cases which discuss the limited pleading requirements of notice pleading. (Id., ECF No. 48 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); In re Stroh, 52 F. Supp. 958, 961 (M.D. Pa. 1943))).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

---

[3] To the extent that the magistrate judge recommends granting summary judgment on Rice's FMLA interference claim for her daughter's medical condition because Rice failed to provide adequate notice to Charter, the court declines to adopt this portion of the Report and Recommendation.

9

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

The court agrees with the magistrate judge that Rice failed to sufficiently plead an interference claim for her medical condition in the complaint. Rice's reliance upon cases pre-dating Twombly and Iqbal is misplaced. While the earlier notice pleading standard relied upon the use of liberal discovery to "define disputed facts and issues and to dispose of unmeritorious claims," Swierkiewicz, 534 U.S. at 512, the newer "plausibility" standard curtails the scope of a case to only those claims made with a sufficient factual basis in the complaint. See Twombly, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management[.]'")

In the instant case, the complaint provides a plausible claim of retaliation, but not interference, for Rice's medical condition. The complaint's factual background mentions Rice's medical conditions twice:

> 26. On Monday, March 31, Rice attended a previously scheduled meeting with Michael Barker in Charter's human resources department, wherein she discussed her own chronic medical condition – severe, unexplained pain and swelling in her feet and legs – and her need to take intermittent FMLA leave for evaluation and treatment.
>
> 27. At this meeting, Rice requested intermittent FMLA leave for up to three working days per month. Barker provided Rice with an application for FMLA and a medical certification form.

(Compl. 5, ECF No. 1.) The context of these facts was entirely prospective, rather than retrospective, unlike the claim for interference, which stated in pertinent part as follows:

>   33.  Rice's minor daughter suffered from a "serious health condition" as defined by the FMLA because of her clinical depression and associated mental health issues.
>
>   34.  Rice informed her supervisor that she needed to take leave on March 22, 2014 in order to facilitate and attend a medical appointment related to her daughter's serious health condition. Rice later informed a member of Charter's Workforce Management team of the same need.
>
>   35.  Rice was eligible for leave under the FMLA for the time she missed from work on March 22, 2014 because that time was used to care for the serious health condition of her daughter.
>
>   36.  Charter did not inform Rice that she was eligible for leave under the FMLA for that time, despite its knowledge of Rice's FMLA-qualifying purpose. Charter did not grant Rice FMLA leave for that time, despite its knowledge of Rice's FMLA-qualifying purpose.

(Id. at 5-6, ECF No. 1.) Similarly, while Rice discusses her medical condition in the retaliation claim, it is done prospectively:

>   43.  In her March 31, 2014 meeting with Michael Barker, Rice attempted to assert her rights under the FMLA by requesting intermittent leave.
>
>   44.  Due to her ongoing medical condition and the ongoing requirement of caring for her minor daughter, Rice had a reasonable belief that she was entitled to leave under the FMLA.
>
>   45.  Rice was, in fact, entitled to leave under the FMLA both for the severe, unexplained pain and swelling in her feet and legs and for her role in caring for her minor daughter with a serious health condition.
>
>   46.  On April 1, 2014, the day after Rice met with Barker to begin the application process for FMLA leave, Charter Communications discharged Rice from her position as a call center operator.

(Id. at 7; ECF No. 1.) With respect to her absence on March 22, 2014, the complaint contains no allegations or facts which could be reasonably construed to show that Rice notified Charter or that Charter was aware that Rice needed to leave for her own serious health condition prior to March 22, 2014. Rice has failed to provide sufficient factual allegations in the complaint from

which it could be inferred that Charter interfered with her FMLA rights on the basis of Rice's own medical condition. Further, Rice never moved to amend the complaint. Rice's attempt to allege that Charter interfered with her right to take leave for her own medical condition is improper and need not be considered on summary judgment. Moreover, even if Rice had raised an interference claim for her own medical condition in the complaint, it would fail for the same reason the interference claim for her daughter's medical condition failed because Rice affirmatively declined FMLA for the past absences. Thus, Charter is entitled to summary judgment on this claim.

### C. FMLA Retaliation Claim

Rice objects that the magistrate judge erred in finding that she failed to demonstrate that a reasonable jury could find Charter's stated reason for terminating her was a pretext for discrimination. The court analyzes Rice's retaliation claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). This framework is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quoting McDonnell Douglas, 411 U.S. at 802) (citations omitted). In satisfying the third step, if the plaintiff is able to show by a preponderance of the evidence that the defendant's purported

reason is a pretext, then the "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

To establish a prima facie case of retaliation under the FMLA, Rice must "show that [s]he engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). Assuming, without deciding, that Rice has established a prima face case of retaliation,[4] Charter has offered a legitimate, non-discriminatory reason for Rice's termination. Charter avers that Rice was terminated because she incurred a full occurrence for leaving eight hours early on March 22, 2014, and the next corrective action based on their progressive discipline steps set forth in Charter's Attendance Policy was Rice's termination. Therefore, the burden shifts back to Rice to prove that the termination was a pretext for FMLA retaliation. See Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

Rice alleges that she has offered sufficient evidence of pretext for the following reasons: (1) Dillard's corrective action report contradicts itself by alternately requesting Rice be terminated or receive a final warning; (2) Barker believed Rice was facing a final warning, rather than termination prior to the March 31, 2014, meeting; (3) Rice was terminated ten days after her final occurrence, while employees are typically terminated during their next shift;

---

[4] See Lerner v. Shinseki, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011) (unpublished).

13

(4) Dillard was terminated the same day she recommended corrective action against Rice; (5) Barker did not directly reference Rice's absence on March 22, 2014, during their FMLA meeting; (6) temporal proximity of her termination to her request for FMLA leave; (7) Barker did not wait to receive Rice's medical documentation before terminating her; (8) and Charter has exercised its discretion in the past to not terminate employees who have incurred the number of attendance occurrences that would justify termination under the Attendance Policy. (Id. at 19-21, ECF No. 48.) Rice argues that this evidence is sufficient to support, at a minimum a "single reasonable inference of retaliatory intent," which she argues is all that she is required to prove. (Objs. 17-18, ECF No. 48.)

None of Rice's arguments establish sufficient evidence of pretext for Charter's legitimate, nondiscriminatory reason for her termination.

> [A]n employee who requests or is on FMLA leave has no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request or leave than he or she did before submitting the request . . . . [A]n employee may be terminated if the action would have been taken in the absence of the FMLA request or leave.

McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1108 (10th Cir. 2002) (citation omitted). Under Charter's Attendance Policy, Rice had received her final warning prior to arriving one hour late and departing eight hours early on March 22, 2014. (Mot. Summ. J. Ex. 4 (Rice Dep. 8, 104), ECF No. 25-4.) The next corrective action under the Attendance Policy was termination. (Id. Ex. 5 (Barker Dep. Ex. 8 (Attendance Policy, ¶ 5)), ECF No. 25-5.) Further, Dillard's corrective action report requested Rice's termination. (Id. Ex. 5 (Barker Dep. Ex. 10 (Dillard Email 99-100)), ECF No. 25-5.) While Rice focuses on the subject line of Dillard's email and the possible confusion it caused, it is clear that Charter intended to discipline Rice

14

before she raised the issue of FMLA leave and ultimately did so in accordance with Dillard's request for termination and the terms of its Attendance Policy.

After review and for the reasons set forth above, a reasonable jury could not infer from the evidence that Rice's FMLA request was a motivating factor in Charter's decision to terminate her. Charter is entitled to summary judgment on Rice's retaliation claim. Therefore, Charter's motion for summary judgment is granted. Based on the foregoing, the court adopts the portions of Magistrate Judge Austin's Report and Recommendation to the extent it is consistent with this opinion.

Therefore, it is

**ORDERED** that Charter's motion for summary judgment, docket number 25, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
November 17, 2016